Filed 12/2/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| STEPHNIE TRUJILLO,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J-M MANUFACTURING COMPANY, INC., et al.,<br><br>Defendants and Appellants. | B327111<br><br>(Los Angeles County<br>Super. Ct. No. 21STCV01175) |

APPEAL from an order of the Superior Court of Los Angeles County, Jon R. Takasugi, Judge. Reversed and remanded with directions.

Rosen Saba, James R. Rosen and Francesca N. Dioguardi for Defendants and Appellants.

McNicholas & McNicholas, Matthew S. McNicholas and Jason L. Oliver for Plaintiff and Respondent.

_____

# INTRODUCTION

Stephnie Trujillo (respondent) filed a complaint against her former employer J-M Manufacturing Company (JMM)[1] and four former coworkers David Merritt, David Moore, David Christian, and Chuck Clark. After weeks of negotiating, the parties entered into a stipulation for arbitration, later signed as an order by the trial court. Court proceedings were stayed and the parties initiated arbitration in May 2021. JMM timely paid the arbitrator's invoices for over a year. On October 18, 2022, the arbitrator contacted JMM and requested payment for the invoice with a due date of September 12, 2022. JMM immediately paid the invoice. Later that evening, Trujillo gave notice of her intent to withdraw from arbitration due to JMM's late payment. She filed a motion to withdraw from arbitration pursuant to Code of Civil Procedure[2] section 1281.98, which the trial court granted.

On appeal, JMM and the four coworkers (whom we collectively refer to as appellants) argue the trial court erred in ruling that section 1281.98 applied. Appellants contend the statute does not apply to them because: 1) they entered into a post-dispute stipulation to arbitrate with mutually agreed upon terms, whereas the statute governs mandatory pre-dispute arbitration agreements; and 2) they were not the "drafting party" as defined in section 1280, subdivision (e).

We agree with appellants and reverse. We find section 1281.98, subdivision (a) does not apply because the parties did

---

[1] JMM doing business as J-M Eagle and J-M Pipe Manufacturing Company. We refer to them collectively as JMM.

[2] Undesignated statutory references are to the Code of Civil Procedure.

not submit to arbitration pursuant to any pre-dispute agreement and because JMM does not qualify as a "drafting party" as defined by section 1280, subdivision (e). We remand with instructions to the trial court to enter an order denying Trujillo's motion to withdraw from arbitration and to reinstate the stay of trial court proceedings pending completion of arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. *Trujillo's Complaint*

On January 12, 2021, Trujillo filed a complaint against JMM alleging five causes of action: 1) unlawful sexual/gender discrimination; 2) unlawful sexual/gender harassment; 3) failure to prevent sexual/gender discrimination, harassment, and retaliation; 4) retaliation for opposing forbidden practices; and 5) injunctive relief.

On February 22, 2021, JMM reminded Trujillo that in 2012, she executed JMM's arbitration agreement that required her to resolve any employment disputes by private arbitration. Based thereon, JMM asked Trujillo to submit to arbitration. A dispute arose regarding the applicability and validity of some of the terms of the pre-dispute arbitration agreement. On February 24, 2021, Trujillo proposed "exploring a potential stipulation to arbitrate that would take the place of the claimed agreement" and "agree on the governing terms of any arbitration." (Boldface and italics omitted.)

### II. *Stipulation re: Arbitration*

On March 17, 2021, Trujillo circulated a draft of her proposed stipulation re: arbitration. It included the following provision, relevant to this appeal: "If for any reason, [JMM] fails to pay the arbitral fees *within thirty (30) days of presentation*,

3

such failure may constitute a waiver of arbitration such that the Designated Arbitrator may order this matter immediately returned to the active docket of the Los Angeles Superior Court." (Italics added.)

On March 22, 2021, JMM replied with proposed redlined edits and the parties continued to discuss the terms of the proposed stipulation.

On April 26, 2021, Trujillo sent a revised draft of the proposed stipulation "containing the changes [they] discussed." On April 27, 2021, Trujillo circulated a further revised draft of the stipulation and noted: "I have accepted all of your changes *except for the changes regarding the payment of arbitral fees.*" (Italics added.)

On April 27, 2021, JMM sent a reply: "I was under the impression that after we discussed the harshness of your proposed term requiring [JMM] to pay [the arbitrator] in 30 days or forfeit rights[,] we agreed to remove it. If I failed to notice our having made the change then, it was an oversight. Please read my redline comments I inserted into the last document for some very good reason why this overreaching term is inappropriate and why [JMM] can't stipulate to it." In the redline comments to the stipulation, JMM noted regarding the payment terms: "[T]his provision is unduly harsh and requires [JMM] to risk forfeiting its right to arbitrate if it reasonably disputes [the arbitrator's] bill or pay a large invoice well in advance of its due date in the event [the arbitrator] sends its estimated hearing invoice 90 days beforehand or allows 60 days to pay. Besides, [the arbitrator] is capable of enforcing its payment policies without [respondent] adding undue advantage." Trujillo removed from the stipulation

4

the term requiring JMM to pay the arbitrator within 30 days or forfeit its right to arbitration.

On April 28, 2021, the parties signed their finalized five-page stipulation outlining specific terms for arbitration. In its final form, the stipulation provides:

- JMM "*shall timely pay* all arbitral fees and costs of arbitration." (Italics added.)
- "It is also an express condition of this Stipulation that the Arbitration shall be governed by, and the Designated Arbitrator shall adhere to, California law, including but not limited to the California Evidence Code, the California Code of Civil Procedure, and all relevant California statutory, regulatory, and state case law . . . and all rules, codes, regulations and controlling decisional law relating thereto under California state law. . . . If any procedures or rules attempted to be employed by the Designated Arbitrator are inconsistent or conflict with the California Evidence Code, the California Code of Civil Procedure, relevant California statutory, regulatory, and/or state case law and/or any terms of this Stipulation, the relevant provisions of the aforementioned California statutory, regulatory, and/or case law shall control."

On May 10, 2021, the trial judge approved the stipulation, which was then entered as an order. Trial court proceedings were stayed pending arbitration.

III.    *Arbitration*

On May 11, 2021, arbitration commenced via ADR Services. Inc. (ADR).  On May 12, 2021, ADR issued the first invoice, which JMM paid on June 2, 2021.  On July 12, 2021, ADR issued the second invoice, which JMM paid on July 19, 2021.  On July 6, 2022, ADR issued the third invoice, which JMM paid on July 26, 2022.

On July 13, 2022, ADR issued the fourth invoice for 20 hours of anticipated work to be completed on October 11 and 12, 2022.  The invoice specified a payment due date of September 12, 2022.

At 2:11 p.m. on October 18, 2022, ADR sent an email to the parties, indicating that the arbitrator "completed the rulings" for October 11 and 12, 2022, and will "release them [when they] receive full payment.  Please find the attached invoice and let me know when we can expect to receive your payment."  Appellants emailed and stated the failure to pay was inadvertent and immediately paid the fourth invoice.

Later that evening, at 9:26 p.m., Trujillo sent an email notifying ADR and appellants that because JMM did not pay within 30 days of the invoice's due date—i.e., by October 12, 2022, she was unilaterally electing to withdraw her claims from arbitration and to proceed in court pursuant to section 1281.98.

The arbitrator issued an order staying arbitration pending the trial court's determination of whether section 1281.98 applies and whether to lift the litigation stay and resume proceedings in court.

## IV. *Motion to Withdraw from Arbitration*

On January 11, 2023, Trujillo filed a motion electing to withdraw from arbitration pursuant to section 1281.98. She also sought an order vacating the stay of trial court proceedings.

On January 25, 2023, JMM filed their opposition to the motion to withdraw from arbitration.

On January 31, 2023, Trujillo filed a reply.

## V. *Trial Court's Ruling*

On February 7, 2023, the trial court heard Trujillo's motion to withdraw from arbitration and issued a tentative ruling denying the motion to withdraw. The trial court stated it was inclined to find that JMM's failure to pay did not trigger section 1281.98 because at no time did ADR terminate the arbitration proceedings or inform the parties of its intent to do so because of JMM's unpaid invoice. "[D]espite the lack of timely payment, the arbitrator 'issued tentative rulings on the Discovery Motions in advance of the October 11 and 12 hearings, and the hearings proceeded accordingly on October 11 and 12.'" "Then, on October 18, 2022, ADR informed the parties that the rulings on the Discovery Motions would be released upon payment of the Discovery Invoice" and JMM "immediately paid the outstanding Discovery Invoice that same day."

After hearing oral argument, the trial court took the matter under submission; later that same day, it issued its order granting the motion to withdraw. It found that because JMM immediately paid upon receipt of the October 18, 2022 email from ADR, no delay resulted in prejudice to Trujillo. Nevertheless, "were the [c]ourt to conclude that section 1281.98 was not triggered here, it would be, in effect, granting [JMM] an

7

exception because the delay did not result in any prejudice. It is clear no such exception [to section 1281.98] is allowed under the law." The trial court lifted the stay.

This appeal followed.

## DISCUSSION

Appellants argue section 1281.98 "has no application to the present case." They argue the parties did not submit their dispute to arbitration based on any mandatory *pre-dispute* arbitration agreement; instead, they negotiated and entered into a *post-dispute* stipulation voluntarily. Appellants also argue the statute applies to the "drafting party," i.e., the "company or business that included a predispute arbitration provision in a contract with [an] . . . employee"; but here, respondent (with her counsel) primarily drafted the terms of the arbitration stipulation. Appellants request that we reverse and remand this matter with instructions to the trial court to deny Trujillo's motion to withdraw from arbitration and to reinstate the stay of court proceedings pending arbitration.

## I.    *Standard of Review*

Ordinarily, a trial court's determination that a party has waived the right to arbitrate is subject to substantial evidence review. (*Doe v. Superior Court* (2023) 95 Cal.App.5th 346, 397, as modified Sept. 28, 2023 (*Doe v. S.C.*).) However, "where the parties do not dispute the factual support for the trial court's ruling, but instead dispute the proper interpretation of section 1281.98, the appellate court's review is de novo." (*Doe v. S.C.*, at p. 398; *De Leon v. Juanita's Foods* (2022) 85 Cal.App.5th 740, 749–750 (*De Leon*).)

8

Our review here is independent because we interpret section 1281.98 on undisputed material facts. (*Hohenshelt v. Superior Court* (2024) 99 Cal.App.5th 1319, 1324, review granted June 12, 2024, S284498 (*Hohenshelt*); *Cvejic v. Skyview Capital, LLC* (2023) 92 Cal.App.5th 1073, 1077 (*Cvejic*).) " 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose. [Citation.] We begin by examining the statute's words, giving them a plain and commonsense meaning. [Citation.]' [Citation.] '[W]e must look first to the words of the statute because they are the most reliable indicator of legislative intent. [Citation.] If the statutory language is clear and unambiguous, the plain meaning of the statute governs. [Citation.]' [Citation.] [¶] 'If, however, the language supports more than one reasonable construction, we may consider "a variety of extrinsic aids, including the ostensible objects to be achieved" ' and the statute's legislative history." (*De Leon*, *supra*, 85 Cal.App.5th at p. 750; *Doe v. S.C.*, *supra*, 95 Cal.App.5th at pp. 399–400.)

II. ***Section 1281.98***

In 2019, to curb arbitration abuse, the Legislature added section 1281.98[3] to the California Arbitration Act (CAA) (§ 1280 et seq.) with the passage of Senate Bill No. 707. (2019–2020 Reg.

---

[3] The Legislature enacted section 1281.97 along with section 1281.98. The two sections include parallel provisions as to procedures and remedies and "require no different analysis." (*Williams v. West Coast Hospitals, Inc.* (2022) 86 Cal.App.5th 1054, 1066 (*Williams*).) Section 1281.97 governs the fees and costs due to *initiate* an arbitration proceeding whereas section 1281.98 governs fees and costs required to *continue* an arbitration.

Sess.) (Stats. 2019, ch. 870, § 5; *Cvejic, supra*, 92 Cal.App.5th at p. 1076; *Doe v. S.C., supra*, 95 Cal.App.5th at p. 400.) The abuse was the "procedural limbo and delay workers . . . face when they submit to arbitration, pursuant to a mandatory arbitration agreement, but the employer fails or refuses to pay their share of the arbitration fees." (Sen. 3d reading analysis of Sen. Bill No. 707 (2019–2020 Reg. Sess.) as amended May 20, 2019, p. 2; see *Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 633–634 (*Gallo*).) The Legislature expressed concern that "[a] company's strategic non-payment of fees and costs severely prejudices the ability of employees or consumers to vindicate their rights. This practice is particularly problematic and unfair when the party failing or refusing to pay those fees and costs is the party that imposed the obligation to arbitrate disputes." (Stats. 2019, ch. 870, § 1, subd. (d).)

The Legislature noted that when an employer "fails to properly pay for the arbitration, existing law does not provide the employee . . . with a clear means to redress their harms. Although courts have held that such failures to pay for arbitration may be grounds to invalidate an arbitration agreement, state law does not provide clear guidance for courts and litigants in the event a drafting party fails to properly pay to commence [or continue] arbitration in a timely manner." (Assem. Com. on Judiciary, Analysis of Sen. Bill 707 (2019–2020 Reg. Sess.), as amended May 20, 2019, p. 6.) "One of the Legislature's main objectives [in enacting section 1281.98] was to deter employers from strategically withholding payment of arbitration fees so that they could no longer stymie the ability of employees to assert their legal rights." (*Doe v. S.C., supra*, 95 Cal.App.5th at p. 401.)

That being said, let's recite the statute in its current form.

Section 1281.98 provides: "*In an employment* or consumer *arbitration that requires*, either expressly or through application of state or federal law or the rules of the arbitration provider, that *the drafting party pay certain fees and costs* during the pendency of an arbitration proceeding, *if the fees or costs required to continue the arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee* or consumer *to proceed with that arbitration as a result of the material breach*." (§ 1281.98, subd. (a)(1), italics added.)

The statute deems the failure to pay an arbitration fee invoice within 30 days of its due date a material breach. Subdivision (b) of the statute provides a choice of forum "[i]f the drafting party materially breaches"—an employee may "unilaterally elect" to "[w]ithdraw the claim from arbitration and proceed in a court of appropriate jurisdiction" or "[c]ontinue the arbitration proceeding . . . notwithstanding the drafting party's failure to pay fees or costs." (§ 1281.98, subd. (b)(1), (2).)

Prior to the enactment of section 1281.98, state law did "not provide clear guidance for courts and litigants in the event a drafting party fails to properly pay to commence arbitration in a timely manner." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 707 (2019–2020 Reg. Sess.) as amended May 20, 2019, p. 6.)

III.    ***Recent Appellate Opinions***

As expected with the enactment of new law, there have been many recent appellate opinions that consider and interpret section 1281.98. The parties heavily rely on and cite to these cases in their briefs. We review them for insight and guidance.

11

In *Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761 (*Espinoza*), the arbitration provider sent the initial invoice with a due date of May 31, 2021. (*Id.* at p. 772.) While the drafting defendant's vice president of operations had approved payment of the invoice on June 15, 2021, there was a delay due to clerical error and payment was not received until July 9, 2021. (*Ibid.*) Plaintiff filed a motion under sections 1281.97 and 1281.98, contending defendant had materially breached the arbitration agreement by failing to pay the invoice within 30 days of the due date. (*Espinoza,* at p. 772.) The trial court found the employer's late payment of an arbitration provider's invoice was "in 'substantial[ ] compliance' with the arbitration agreement and 'not in material breach,' because the delayed payment was due to ' "clerical error," ' and the delay did not prejudice plaintiff." (*Id.* at p. 775.)

The reviewing court disagreed and reversed the trial court's determination. It found "[t]he language of [the statute] is unambiguous. It provides that the drafting party is in 'material breach,' and the nondrafting party is entitled to the remedies under the statute . . . . Under the plain language of the statute, the triggering event is nothing more than nonpayment of fees within the 30-day period—the statute specifies no other required findings, such as whether the nonpayment was deliberate or inadvertent, or whether the delay prejudiced the nondrafting party. The plain language therefore indicates the Legislature intended the statute to be strictly applied whenever a drafting party failed to pay by the statutory deadline." (*Espinoza, supra,* 83 Cal.App.5th at p. 776.)

12

In *De Leon*, Juanita's Foods failed to pay its share of arbitration fees within 30 days after the due date despite receiving multiple email reminders. (*De Leon*, *supra*, 85 Cal.App.5th at pp. 745, 747–748.) Due to late payment, the trial court concluded Juanita's Foods was in material breach of the parties' arbitration agreement and allowed De Leon to proceed in court. (*Id*. at p. 748.) On appeal, the reviewing court rejected the drafting employer's argument that the trial court's construction was a " 'hyper-technical reading' of section 1281.98 that failed to account for whether [a] late payment caused delay or prejudiced De Leon." (*Id*. at p. 752.) Finding section 1281.98's language "clear and unambiguous," the appellate court explained it "establishes a simple bright-line rule that a [company's] failure to pay outstanding arbitration fees within 30 days after the due date results in its material breach of the arbitration agreement." (*De Leon*, at pp. 752–753.)

In *Williams*, the son of a hospital patient sued the hospital for elder abuse and other claims, alleging the patient lost nearly 40 pounds and became severely dehydrated at the hospital, resulting in fatal renal failure. (*Williams*, *supra*, 86 Cal.App.5th at p. 1062.) The trial court granted the son's motion to withdraw from arbitration because the hospital had not timely paid its share of arbitration fees under section 1281.98, resulting in material breach. (*Williams*, at p. 1063.) In affirming the order allowing withdrawal, the court acknowledged the hospital's "belated payment was unintentional" and "the ensuing delay amounted to a few days," but concluded that "nothing in section 1281.98 as drafted depends on the intent or good faith of a particular drafting party in a specific case. [Citations.] To further its stated purpose, the Legislature in enacting sections

13

1281.97 and 1281.98 chose to neither require nor permit an inquiry into the reasons for a drafting party's nonpayment." (*Id.* at p. 1074.)

In interpreting section 1281.98, *Doe v. S.C.* held that an employer's payment of fees and costs associated with arbitration of an employee's sexual harassment and assault claims did not occur until the arbitration provider *received* the mailed check, as opposed to when the check was mailed. (*Doe v. S.C., supra,* 95 Cal.App.5th at pp. 350, 358, 360.) The "proverbial check in the mail" does not constitute payment. (*Id.* at p. 350.) As payment was received and made more than 30 days after the due date, it was deemed untimely. (*Id.* at p. 351.)

*Hohenshelt* and *Cvejic* addressed the issue of whether the parties' designated arbitration service provider may cure a missed payment by the employer by setting a new payment due date. (See generally *Hohenshelt, supra,* 99 Cal.App.5th 1319, review granted; see generally *Cvejic, supra* 92 Cal.App.5th 1073.) We held in *Cvejic* that "[t]he statute does not empower an arbitrator to cure a party's missed payment." (*Cvejic,* at p. 1078.) We similarly held in *Hohenshelt* that the arbitration service's "letter allowing payment until [a new, extended date] in no way cured [the employer's] missed payment and material breach." (*Hohenshelt,* at p. 1325.)

In *Reynosa v. Superior Court* (2024) 101 Cal.App.5th 967 (*Reynosa*), plaintiff employee argued that the employer failed to remit payment within the statutorily prescribed 30-day period on two occasions: 1) employer received a $27,380 invoice "due upon receipt" on July 21, 2021, and rendered its $27,130 payment more than 30 days later on September 17, 2021, leaving a balance of $250; 2) employer received a $23,040 invoice "due upon receipt"

14

on December 12, 2022, and rendered its $23,290 payment more than 30 days later on February 22, 2023.  (*Id*. at pp. 975–977, 984.)

As to the July 21, 2021 invoice, the reviewing court referred to evidence in the record where, "in an e-mail to counsel sent on July 19, 2021, [the arbitration service's] case manager indicated the parties 'agreed upon' October 29, 2021, as the 'Final Date for Payment.' " (*Reynosa, supra*, 101 Cal.App.5th at p. 984, boldface omitted.)  The reviewing court found October 29, 2021 "appears to be the appropriate due date" from which the 30-day grace period begins to run.  (*Ibid*.)  However, the employer did not pay the remaining $250 balance until February 22, 2023, nearly 16 months after the due date, because it alleged the remaining $250 reflected the employee's obligation to pay an initial case management fee per their arbitration agreement.  (*Id*. at pp. 984–985.)  The Court of Appeal found the employer was mistaken and thus in breach for its failure to remit " 'less than the full amount due by the expiration of the statutory grace period' "—i.e., the entire $27,380 by October 29, 2021.  (*Id*. at p. 985.)

As to the December 12, 2022 invoice, "[i]n an e-mail to counsel sent on December 9, 2022, [the arbitration service's] case manager identified February 23, 2023, as the 'Final Date for Payment of arbitration hearing fees and other outstanding invoices.' " (*Reynosa, supra*, 101 Cal.App.5th at pp. 985–986, boldface omitted.)  The Court of Appeal reasoned that "[i]n contrast to the July 19, 2021 e-mail, the December 9, 2022 e-mail did not contain any reference to the parties expressly agreeing to this due date." (*Id*. at p. 986.)  It referred to the trial court's finding that the parties had " 'mutually agreed upon' " February 23, 2023 as the due date and that the employee " 'did not object to

15

the[] extended payment deadline[] when proposed' " and continued with the arbitration process for months by confirming various dates. (*Ibid*.)

The Court of Appeal held: "In our view, the construction of 'agreed' in section 1281.98, subdivision (a)(2) advanced by [employer] and adopted by the superior court undermines the legislative intent: by letting a claimant's silence, failure to object, or other seemingly acquiescent conduct (not amounting to direct expression) constitute a sufficient manifestation of his or her agreement to an extension, the need for the arbitration provider or the business/employer to actively procure such consent—e.g., by having the claimant sign an acknowledgement form—is obviated." (*Reynosa*, *supra*, 101 Cal.App.5th at p. 988.) The appellate court found the trial court's finding was not entitled to deference because it ignored evidence the employee was not apprised or cognizant of the employer's untimely payment of fees until the employee's counsel spoke to the arbitration service's case manager at a later date. (*Id*. at p. 990.) Because the employee "did not directly express agreement with the February 23, 2023 due date," the December 12, 2022 invoice was due upon receipt and the employer had until January 11, 2023 to pay the arbitration fees. (*Id*. at p. 988.) The Court of Appeal concluded the employer had "materially breached" by submitting payment on February 22, 2023. (*Id*. at p. 989.)

IV.  *Analysis[4]*

A.  **Pre-Dispute vs. Post-Dispute Arbitration Agreement**

Appellants contend section 1281.98 does not apply here because the parties did not submit their dispute to arbitration based on a *pre*-dispute arbitration agreement, but rather, a *post*-dispute stipulation.  Appellants argue Trujillo was "not bound to adhere to a predispute arbitration provision, but rather to a postdispute stipulation" that was entered into by the parties "substantially *after* the dispute arose."

---

[4]  On September 6, 2024, Trujillo asked us to stay oral argument pending a decision by our Supreme Court in *Hohenshelt* as to whether section 1281.98 is preempted by the Federal Arbitration Act (9 U.S.C.A. § 1 et seq.).  We denied the request.

During oral argument, Trujillo again raised the issue of preemption.  We acknowledge that whether this statute is preempted by the Federal Arbitration Act is subject to much debate and is currently pending before our Supreme Court.  (See *Hohenshelt*, *supra*, 99 Cal.App.5th at p. 1326 (dis. opn. of Wiley, J.), review granted.)

Nevertheless, the issue of preemption was not discussed by Trujillo in her brief on appeal.  Neither was the issue raised in the trial court in her motion to withdraw from arbitration or in her reply in support of the motion to withdraw.  Nor did Trujillo orally raise preemption at the hearing on February 7, 2023 in the trial court.  She has forfeited the issue.  (See *Cvejic*, *supra*, 92 Cal.App.5th at p. 1079; see *Williams*, *supra*, 86 Cal.App.5th at p. 1063, fn. 3.)

We decide, in the first instance, whether the parties' entry into a *post*-, not pre-, dispute arbitration agreement affects the applicability of section 1281.98.  We note that every single appellate opinion we reviewed above involved arbitration arising from a pre-dispute arbitration agreement.  Not a single case considered or addressed a section 1281.98 issue arising from a post-dispute arbitration agreement.

We preliminarily remark that while the parties here were previously bound by a mandatory pre-dispute arbitration agreement signed in 2012, that is not the operative arbitration agreement and does not govern the arbitration proceedings between the parties in this present case.  On appeal, Trujillo contends the post-dispute stipulation resulted from JMM's attempt to enforce the pre-dispute arbitration agreement.  Not true.  The record shows JMM emailed a copy of the 2012 agreement to Trujillo and asked her to submit to arbitration.  Trujillo did not contest the validity or enforceability of the pre-dispute agreement in court.  JMM never moved to compel arbitration based on the pre-dispute agreement.  Instead, Trujillo drafted and circulated a post-dispute arbitration agreement to "agree on the governing terms of any arbitration."

We conclude the Legislature intended to limit section 1281.98's applicability to arbitration arising from a *pre-dispute* agreement.  We so conclude because the Legislature provided us with a clear answer by reading section 1281.98 alongside section 1280.  Section 1281.98, subdivision (a)(1) refers to the failure to timely pay arbitration fees by "the drafting party," a term defined by section 1280, subdivision (e) as "the company or business that included a *predispute* arbitration provision in a contract with a

18

consumer or employee." (§ 1280, subd. (e), italics added; see § 1281.98, subd. (a)(1).)

Trujillo minimizes any distinction between pre-dispute and post-dispute agreements to arbitrate, but the California Supreme Court recognized the crucial difference in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*), a case decided over two decades ago. When "an employer and an employee knowingly and voluntarily enter into an arbitration agreement after a dispute has arisen[,]" that employee is "free to determine what trade-offs between arbitral efficiency and formal procedural protections best safeguard their statutory rights." (*Id.* at p. 103, fn. 8.) The *Armendariz* court actually commented on and foresaw a potential loophole years before the enactment of section 1281.98. "Because [requiring the employer to shoulder the arbitration fees and costs] only appl[ies] to mandatory, *predispute* employment arbitration agreements, and because in many instances arbitration will be considered an efficient means of resolving a dispute both for the employer and the employee, *the employer seeking to avoid both payment of all forum costs and litigation can attempt to negotiate postdispute arbitration agreements with its aggrieved employees.*" (*Armendariz*, at p. 112, italics added.)

We hold section 1281.98 does not apply to the parties before us as they did not submit to arbitration based on a pre-dispute arbitration agreement.

## B.    **The Drafting Party**

Appellants contend that JMM was not the "drafting party" and the plain language of section 1281.98 makes clear that the statute only prescribes remedies for untimely payment by the "party who drafted a predispute arbitration agreement." They

also argue section 1281.98 "has no application to the present case" because the statute expressly applies to late or non-payment by the "drafting party," whereas here, the arbitration stipulation was drafted primarily by Trujillo.

Here, the statutory language is clear. Section 1281.98 explicitly delineates the duty of the "drafting party" to pay arbitration fees and costs within 30 days after the due date or else be deemed in material breach of the arbitration agreement. (§ 1281.98, subd. (a)(1).) Some terms in the statutory scheme are defined (see § 1280), and the term "drafting party" is one of them. "Drafting party" is defined as "the company or business that included a predispute arbitration provision in a contract with a consumer or employee" and "includes any third party relying upon or otherwise subject to the arbitration provision, other than the employee." (*Id.*, subd. (e).)

Given the unique set of circumstances in the case before us, Trujillo *was* subject to the pre-dispute arbitration agreement she signed in 2012. However, the parties did not submit to arbitration based on that 2012 pre-dispute arbitration agreement. JMM never moved to compel arbitration based on that pre-dispute arbitration. The record shows that after having filed a civil complaint in court on January 12, 2021, employee Trujillo—by way of her counsel—*drafted* and circulated to JMM a post-dispute stipulation for arbitration on March 17, 2021. The record also shows Trujillo revised her draft stipulation after continuing to negotiate with JMM for over six weeks, resulting in the final draft executed by the parties and approved by the trial court on May 10, 2021. The parties submitted to arbitration based on that post-dispute stipulation primarily drafted by Trujillo.

The fact that the Legislature specifically elected to define the term "drafting party" indicates that the Legislature intended the statute to apply only to an employer or company that drafted the pre-dispute arbitration agreement binding the employee. Section 1281.98 "focuses exclusively on the obligations of the drafter of the arbitration agreement. . . . The drafter is the 'business or company that pushed the case into an arbitral forum' and, historically, burdened a consumer or employee with " ' "the procedural limbo and delay" ' " the Legislature sought to address. (*Gallo*, *supra*, 81 Cal.App.5th at p. 634.)

Here, the two glaring discrepancies are a) the drafting party was primarily Trujillo (the employee) and not the "company or business," or in this case, employer; and b) the parties' arbitration was not pursuant to a "*predispute* arbitration provision in a contract with a consumer or employee." (§ 1280, subd. (e), italics added.) As defined by the Legislature in section 1280, subdivision (e), JMM does not qualify as the "drafting party" with respect to the parties' May 10, 2021 post-dispute stipulation to arbitrate. Section 1281.98, subdivision (a)(1) does not apply to JMM.

We conclude section 1281.98, subdivision (a)(1) does not apply here, because the parties did not submit to arbitration based on a pre-dispute arbitration agreement and because JMM was not the "drafting party" as defined by section 1280, subdivision (e). We reverse with instructions to the trial court to deny Trujillo's motion to withdraw from arbitration and to stay trial court proceedings pending completion of arbitration.

21

## DISPOSITION

The order granting the motion to withdraw from arbitration is reversed and the matter remanded with instructions to stay further proceedings in the superior court pending completion of arbitration.

Appellants are awarded costs on appeal.

**CERTIFIED FOR PUBLICATION**


                                        STRATTON, P. J.

We concur:



GRIMES, J.



WILEY, J.